IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–00562–MDB

K.A.O.,[1]

    Plaintiff,

v.

COMMISSIONER, Social Security Administration,
SSA NOTICING,
USAO-SS-NOTICING,

Defendant/Interested Parties.

---

# ORDER

*Pro se* Plaintiff K.A.O. brings this action under the Social Security Act, 42 U.S.C. 405(g) ["the Act"], seeking judicial review of a final decision by Defendant Commissioner, who denied her application for disability insurance benefits and supplemental security income. (Doc. No. 1.) Plaintiff filed an Opening Brief and the Commissioner responded. (["Opening Brief"], Doc. No. 12; ["Response"], Doc. No. 16.) Plaintiff has not replied, and the time to do so has passed. The Commissioner also filed the Administrative Record. (Social Security Administrative Record ["AR"], Doc. No. 9.) After reviewing the briefs, the administrative record, and the applicable case law, this Court **AFFIRMS** the Commissioner's decision.

---

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff K.A.O. is identified by her initials only.

*Pro Se* **Summary**

The Court is affirming the Commissioner's denial of your disability insurance benefits and supplemental security income. Specifically, the Court finds that substantial evidence, thorough analysis, and the law support the Administrative Law Judge's finding that you can secure gainful employment. This is only a high-level summary of this Court's decision and does not contain all relevant information. Please read the full Order below.

## BACKGROUND[2]

Plaintiff applied for disability insurance and supplemental security income under Titles II and XVI of the Act on July 16, 2020, alleging she became disabled on April 13, 2020. (AR at 70.) According to Plaintiff, various health issues, including headaches, back pain, sleep disturbance, confusion, myalgia, fatigue, pure hypercholesterolemia, calculus of gallbladder, situational depression, and COVID-19 prevented her from working. (*Id.* at 362.) Plaintiff has a high school education and previous work experience as a barista and teacher aid. (*Id.* at 362-63.) The Commissioner denied Plaintiff's application on January 7, 2021, and again upon reconsideration on July 30, 2021. (*Id.* at 70.)

Following a hearing on January 28, 2022, an Administrative Law Judge ["ALJ"] issued a written ruling on March 28, 2022, denying Plaintiff's disability claim. (*Id.* at 85, 118.) In rendering the decision, the ALJ followed the five steps of the sequential evaluation process,[3] finding that:

---

[2] The following background focuses only on the history relevant to the Court's analysis.

[3] The Social Security Administration ["SSA"] uses a five-step evaluation process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See id.*; *Williams v. Bowen*, 844 F.2d 748,

- *Step One*: Plaintiff had not engaged in substantial gainful activity since April 13, 2020, the alleged onset date. (*Id.* at 73.)

- *Step Two*: Plaintiff had the following severe impairments: COVID-19 infection with residuals (also known as long COVID), depressive disorder, generalized anxiety disorder, and morbid obesity. (*Id.*)

- *Step Three*: Plaintiff's impairments or combination thereof did not meet the medical severity as required by the regulations. (*Id.* at 74.) In assessing Plaintiff's residual functional capacity ["RFC"], the ALJ determined Plaintiff was capable of light work:

  [C]laimant can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. She can sit for approximately 6 hours in an 8-hour day, and stand and walk for approximately 6 hours in an 8-hour day. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance as part of her job requirements. She can occasionally stoop, crouch, kneel, and crawl. She can tolerate only occasional exposure to fumes, odors, and/or irritants. She should never work at unprotected heights or around moving and/or dangerous machinery. She can tolerate moderate levels of noise. She needs to avoid bright lights, that is lights in excess of retail or office-type lighting. She is limited to work that consists only of simple, routine, repetitive tasks. She can have occasional contact with the public, coworkers, and supervisors. She can maintain concentration, persistence, and pace for extended periods of 2-hour periods, during a normal workday with normal breaks, in work that consists of no more than simple, routine, repetitive tasks. Additionally, she is capable of performing low stress work, defined as work with occasional decision-making and occasional changes in the work setting.

  (*Id.* at 76.)

- *Step Four*: Plaintiff was unable to perform her past relevant work. (*Id.* at 83.)

---

750-51 (10th Cir. 1988) (describing steps in detail). The claimant has the burden of proof through step four; the SSA has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). At step five, the Commissioner must show the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience. *Id.* Moreover, as relevant here, the regulatory standard for assessing disability is the same under both Titles II and XVI. *Fleming v. Colvin*, 218 F. Supp. 3d 1242, 1247 n. 8 (D. Colo. 2016).

- *Step Five*: Although Plaintiff's impairments limited her to light work—considering Plaintiff's age, education, work experience, and RFC—she could successfully adjust to other work, including as a cafeteria attendant, election worker, and marker. (*Id.* at 83-84.)

The SSA's Appeals Council denied Plaintiff's request for review of the ALJ's decision on October 17, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1.)

## LEGAL STANDARD

In Social Security appeals, a court's review is limited to determining whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). Substantial evidence goes beyond a mere scintilla and constitutes relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").

In making this determination, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). The court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Nevertheless, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

4

In applying the above principles, this Court is mindful that Plaintiff proceeds *pro se* and thus affords her papers and filings a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1269 (10th Cir. 2019). But the Court cannot and does not act as her advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

On appeal, Plaintiff appears to argue the ALJ erroneously denied her application because (1) the state of Colorado determined she qualified for disability benefits; and (2) the RFC determination is not supported by substantial evidence.[4] (Doc. No. 12 at 6-8.) Specifically, Plaintiff asserts the ALJ "did not take into account that the state of Colorado found [her] to be disabled" and found she needed "home health aid to help in Everyday Life[,]" as well as her "ongoing Covid symptoms that are linked to thyroid cancer[.]" (*Id.* at 6, 8.) The Court addresses these arguments and the Commissioner's counterarguments below.

### I.      Colorado's Disability Determination

For applications filed after March 27, 2017, ALJs are instructed to "not provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a plaintiff is] disabled, blind, employable, or entitled to any benefits[.]" 20 C.F.R. § 404.1504. However, ALJs should "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision[.]" *Id.* In other words, although the regulation states that another governmental agency's

---

[4] Even with a liberal interpretation of Plaintiff's pleading, there is no indication she challenges the ALJ's assessment under steps one, two, four, or five of the sequential evaluation.

5

decision is not binding on the Commissioner, ALJs should still factor in the underlying evidence from these agencies when making their decision. Additionally, "Tenth Circuit case law require[s] the Commissioner to consider the findings of other government agencies in reaching a decision about whether a claimant is disabled under the Social Security Act." *S.L. v. Commissioner*, No. 20-cv-01953-RMR, 2022 WL 897104, at *4 (D. Colo. Mar. 28, 2022).

Documents attached to Plaintiff's opening brief indicate that Colorado found her to be disabled on April 10, 2023—one year after the ALJ's written decision. (Doc. No. 16 at 8; Doc. No. 12 at 12.) But this Court cannot consider those documents because Colorado courts "have frequently, consistently, and unequivocally reiterated that, in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Brown v. Hartford Life Ins. Co.*, 428 Fed. Appx. 817, 820 (10th Cir. 2011). Thus, the Court looks to the record, and in so doing the Court does not see any indication the ALJ was informed about Colorado's decision regarding Plaintiff's disability. *See Arteaga v. Barnhart*, 99 Fed. Appx. 852, 856 (10th Cir. 2004) (adequate record and decision by ALJ where Plaintiff's counsel did not indicate or suggest to the ALJ that any records were missing). Moreover, Plaintiff does not argue she attempted to present the Colorado disability determination to the ALJ. And in any event, even if the ALJ had been made aware of the Colorado disability determination, he was not required to adopt any of its conclusions.

In short, the Colorado disability decision is not information the ALJ had, nor was it binding on the ALJ. Thus, it is not a basis for finding error.

**II.    RFC Determination**

The RFC represents the maximum level of work a claimant can do in a work setting despite mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1). When assessing a

6

claimant's RFC, the ALJ must consider the objective medical evidence that may correlate with the symptoms and other available evidence, including the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measure other than treatment used to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).

According to the ALJ in this case, the evidence indicated Plaintiff's impairments did not preclude all employment. (AR at 83-84.) Specifically, the ALJ concluded Plaintiff "engaged in a number of activities that are not consistent with the severity of the reported symptoms and undercut a finding of total disability." (*Id.* at 77.)

As to COVID-19-related impairments, the ALJ detailed how, despite Plaintiff's reports of severe limitations and testing positive for COVID-19 around April 2020, by May 2020 her symptoms were largely resolved. (*Id.* at 78.) Additionally, although Plaintiff reported severe episodes of "brain fog[,]" she also testified that "when experiencing brain fog, she can still follow GPS directions and drive well enough to get home." (*Id.* at 77.) The ALJ also acknowledged Plaintiff's later reports of lingering COVID-19 symptoms including, "cough, wheezing, and shortness of breath" and pneumonia diagnosis. (*Id.* at 78.) However, "the record d[id] not show [Plaintiff] undergoing any pulmonary function testing[,]" and "recent records noted normal oxygen saturation[.]" (*Id.*) The ALJ then highlighted discrepancies in Plaintiff's allegations, such as Plaintiff's reports of difficulties taking her children to an amusement park

7

versus reports of "no physical difficulties with taking her children to a dental appointment[.] (*Id.*) He also contrasted Plaintiff's reports that she was "bedridden 4 days per week" with the record evidence, which was devoid of any reports to medical providers that she was bedridden. (*Id.*) He also considered Plaintiff's own reports that she independently performed most daily tasks, including "walk[ing] 1-2 blocks on level ground[,]" doing "light work around the house such as dusting and washing dishes[,]" and taking her four children to various places, like the dentist and an amusement park. (*Id.* at 80-81.) Overall, the ALJ found that "[w]hile the record indicates some COIVD residuals, the overall good examination findings do not support limiting the claimant to more than a reduced range of light work[.]" (*Id.* at 78.)

As to Plaintiff's allegations related to thyroid cancer, the ALJ acknowledged Plaintiff had previously undergone treatment but classified it as a "nonsevere impairment" and found it did "not cause any additional limitations." (*Id.* at 80.) In doing so, the ALJ emphasized that "a residual functional capacity is not the least an individual can do despite her limitations or restrictions but the most." (*Id.*) Nonetheless, the ALJ ultimately recognized the impairments caused by COVID-19-related limitations and determined that "[b]ecause of the combined effects of COVID-19 infections with residuals as well as morbid obesity," Plaintiff had "a reduced ability to work." (*Id.* at 82.)

The Court finds no error. In his decision, the ALJ acknowledged Plaintiff's reported residual COVID-19-related symptoms, including "cognitive issues, confusion, headaches, shortness of breath, fatigue, and depression." (*Id.* at 77.) However, the ALJ ultimately concluded the record evidence did not support Plaintiff's subjective statements as to the severity of her symptoms. *See Marchand v. Colvin*, No. 14-cv-02533-RM, 2016 WL 1089740, at *8 (D. Colo. Mar. 21, 2016) ("Inconsistencies are a reasonable basis upon which to find a claimant not

8

credible."). For instance, the ALJ found several of Plaintiff's allegations about the severity of her impairments—such as experiencing brain fog, cough, and shortness of breath—unsubstantiated. (*See generally* AR 76-83.) To illustrate, the ALJ noted Plaintiff's statements to examiners that although she experienced episodes of brain fog, she could manage the episodes by, for example, using the GPS while driving. (*Id.* at 77.) Additionally, the ALJ reviewed medical records indicating that Plaintiff's physical and mental examinations showed overall normal results. (*Id.* at 78-79.) And Plaintiff's own testimony revealed she was independent in her personal care and daily tasks, including taking care of her four children alone, and going out with her friends and family. (*Id.* at 75, 80-81.) This evidence, together with examinations "not support[ing] the claimant to more than a reduced range of light work activities[,]" constitutes substantial evidence to support the ALJ's finding that Plaintiff could secure gainful employment. (*Id.* at 78.)

Even if this Court or a different ALJ might have reached a different result based on the record—the mere possibility of a reasonable person reaching a different conclusion is not grounds for reversal. *See Flaherty*, 515 F.3d at 1070; *Lax*, 489 F.3d at 1084 ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'") (quotation omitted). Again, this Court cannot reweigh the evidence that was before the ALJ; rather, the Court's inquiry is limited to whether the ALJ's decision is supported by substantial evidence. *See Flaherty*, 515 F.3d at 1070; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). In short, even with a liberal reading of Plaintiff's arguments—the RFC assessment is consistent with the record, supported by substantial evidence, and does not warrant reversal.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.**

Dated March 22, 2024.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge